UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARK ANTHONY SAY,                    :
                                     :
          Petitioner,                :CIVIL ACTION NO. 3:06-CV-1970
                                     :
          v.                         :
                                     :(JUDGE CONABOY)
FRANKLIN TENNIS, WARDEN,             :
and THOMAS CORBETT, ATTORNEY         :
GENERAL OF PENNSYLVANIA,             :
                                     :
          Respondents.               :

_____

**MEMORANDUM**

     In this Petition, Mark Anthony Say seeks relief from his state

convictions for third degree murder, aggravated assault, and

tampering with evidence.  On November 3, 2003, in Monroe County,

Pennsylvania, Mark Anthony Say was convicted by a jury of these

offenses after approximately four days of trial.  The charges grew

out of the death of Jamie Walling.  Jamie Walling and Mark Anthony

Say were living together when she was found on October 14, 2000,

with a gunshot wound to the head lying on the floor in the bedroom

of the house they shared.  She died from the wound in a hospital on

the following day.

     By way of this Petition, filed pursuant to federal statute 28

U.S.C. § 2254, Mark Anthony Say ("Petitioner") asks this Court to

grant him a new trial.  He argues a new trial is warranted because

he was denied a fair trial by the court in Monroe County due to

1

certain improper evidentiary rulings and also because he now has evidence supporting his theory of the case which he did not have at the time of trial. Specifically, he presents three bases for a new trial to this Court. First, he argues the reference at trial to the report of the blood spatter expert, Paul Kish, caused irreversible prejudice. He also argues the report itself is favorable to his theory of the case. Second, Petitioner argues he was denied a fair trial when the trial judge curtailed the cross-examination of a government witness, Joseph Laird. Third, Petitioner maintains the trial court's allowance of the use of the term "victim" when referring to Jamie Walling denied him a fair trial.

When analyzing the issues raised, we are bound by a body of law which defines the role of a federal district court in reviewing state court proceedings. This is a limited review which does not consider whether the trial court could have made a different decision or whether the reviewing court would have decided the issue differently.

Applying the required analysis, the arguments presented do not provide a basis to grant a new trial for the reasons discussed later in this Memorandum. This Court has thoroughly reviewed Petitioner's claims and given him every favorable inference allowed by applicable law. Given the parameters of the review conducted, we conclude he was given a full and fair trial and his conviction

was fully justified by virtue of the testimony and evidence presented to the Court and jury in Monroe County.

## I. Background

### A.   *Factual Background*[1]

On November 3, 2003, after a jury trial in Monroe County, Pennsylvania, Petitioner was convicted of Aggravated Assault, Tampering with Evidence and Third Degree Murder connected with the death of Jamie Walling.  The incident underlying the conviction took place on October 14, 2000.  On that date at approximately 9:15 p.m., the Monroe County Communication Center received a call from Joseph Laird saying "[s]omebody shot themselves in the head here." (Doc. 18-1 at 1.)  Upon arrival at the residence identified by the caller, police found Jamie Walling unconscious and lying on the floor of the master bedroom.  Also present in the house were Mr. Laird (an employee of Petitioner's in the house reportedly to do some painting) and Petitioner, who was Ms. Walling's boyfriend with whom she lived.  The three were the only people present when the incident occurred.  Ms. Walling's brother, Jared Walling, left shortly before.  Ms. Walling died on October 15, 2000, as a result of her injuries.

Beyond agreeing that Ms. Walling and Petitioner had an argument prior to the incident, Petitioner's and Repondents'

---

[1]   Unless otherwise noted, the background information is derived from the Petition (Doc. 1) and Petitioner's reply brief (Doc. 18-1).

version of events vary dramatically.  Petitioner asserts he was in the kitchen with Mr. Laird following an argument with Ms. Walling when the two "heard a bang."  (Doc. 18-1 at 3.)  He asserts that he thought she had thrown something against the bedroom door and when he looked into the room, he saw her lying on the floor bleeding from the head.  Petitioner further asserts he was cooperative with authorities and consistently gave the same recitation of events.

With citation to the record, Respondents maintain that members of the Pocono Mountain Regional Police Department, the first to arrive on the scene, found Ms. Walling in the bedroom bleeding from the head with a gun lying at her feet.  (Doc. 14 at 9.)  It is asserted that Petitioner could not keep his story straight when first interviewed by police, initially saying Ms. Walling must have shot herself, then saying that someone in the closet shot her, and finally saying it was an accident.  (*Id.*)  Police also noted some clean-up after the shooting.  (*Id.*)

Respondents cite the record regarding Mr. Laird's interview where he reported Petitioner and Ms. Walling had been fighting in the bathroom prior to the shooting and he attempted to break up the fight after observing Petitioner's hands around Ms. Walling's neck. (Doc. 14 at 10.)  He then observed Petitioner grab a pistol, point it at Ms. Walling, and tell her "I'll blow your fucking head off." (*Id.*)  Mr. Laird reported he returned to the kitchen and heard a banging noise from the bedroom after which Petitioner came to the

kitchen saying Ms. Walling had shot herself. (*Id.*) Mr. Laird told police he then went to the bedroom but did not see a gun anywhere near Ms. Walling. (*Id.*) After Petitioner told him to leave the house to direct the ambulance, Mr. Laird did so. He later reported to an interviewer that when he returned to the house, he noticed Petitioner was dressed differently and his hair was wet. (*Id.*) He also reported noting that a gun had been placed at Ms. Walling's feet when he returned to the bedroom. (*Id.*)

This information from Mr. Laird was not provided at the scene or at the police station immediately thereafter. Rather, according to Petitioner, it was provided some time in February 2001. On the night of the incident, though both Petitioner and Mr. Laird were taken to the police station for questioning, Petitioner was released while Mr. Laird was detained. He was arrested and charged with Unsworn Falsification to Authorities, 18 Pa. C.S.A. § 4904(a)(1), and False Reports to Law Enforcement Authorities, 18 Pa. C.S.A. § 4906(b)(1). Mr. Laird was incarcerated at the Monroe County Correctional Facility in lieu of bail.

Petitioner maintains Mr. Laird filed a Petition for Writ of Habeas Corpus on or about October 25, 2000, through an assistant public defender. The allegations therein included that "[t]he charges are filed against the Defendant to cause the Defendant to testify beyond the power of his recollection in a manner desired by the police investigating the manner of Jamie Walling's death."

(Doc. 18-1 at 4.)

On April 27, 2001, Monroe County Assistant District Attorney Mancuso filed a Petition to Nolle Prosequi the charges against Laird because the case lacked "prosecutorial merit." (*Id.*)

On March 22, 2002, the defense filed a pretrial motion for discovery requesting, among other things, "all expert reports generated by Commonwealth witnesses." (Doc. 18-1 at 4.)

On September 3, 2002, the defense filed an Omnibus Pretrial Motion, within which Defendant moved to compel the Commonwealth to produce the expert report of Paul Kish, a blood spatter expert.

On September 9, 2002, Monroe County Assistant District Attorney Christine stated he did not intend to use Mr. Kish in his case in chief and, as of that date, did not intend to get a report from him.

Mr. Kish provided a report to the Commonwealth dated December 3, 2002, which was given to the prosecution's expert, Dr. Mihalakis.  Petitioner asserts a copy of the report was not provided to defense counsel until August 30, 2006.

On October 28, 2003, trial commenced.[2]  Dr. Mihalakis briefly discussed blood spatter findings and stated that he reviewed Dr. Kish's report.  Defense counsel objected on the basis that he had not received the report.  When the prosecution could not show the

---

[2]  Relating to the trial itself, we set out only facts made pertinent by Petitioner's asserted grounds for relief.

Court that it had sent the report to defense counsel, the Court stated: "I am going to remove any reference to Mr. Kish. [Dr. Mihalakis] can't testify about anything that involves Mr. Kish." (Doc. 1 at 29.)

Mr. Laird also testified at trial.  In cross-examining Mr. Laird, defense counsel asked him about a habeas petition previously filed by his attorney.  Mr. Laird stated he did not know his counsel had filed a petition.  Defense counsel then sought to question Mr. Laird about a statement in the petition: "And in it did you say that the police wanted you to testify to something you didn't see . . . or they wanted you to testify contrary to your memory?"  (Doc. 1 at 38.)  After Mr. Laird responded "[n]ot that I recall," the trial judge called a sidebar conference.  (*Id.*)  The prosecution argued that, because Mr. Laird did not know his attorney filed the petition, it was improper cross-examination. The court determined "[i]t is not his statement" and sustained the objection.  (*Id.* at 40.)

While the responding officer was testifying at trial, defense counsel twice objected to the use of the term "victim" when referring to the decedent.  The judge first overruled the objection without comment.  After the second objection, he stated "she can be a victim of her own hand," and again overruled the objection. (Doc. 1 at 44.)

As noted above, the trial concluded on November 3, 2003, with

the Defendant being found guilty of third degree murder, aggravated assault and tampering with evidence.

**B.    *Procedural Background***

Following the guilty verdict, Petitioner appealed the conviction to the Superior Court of the Commonwealth of Pennsylvania asserting eight (8) issues of error, (Doc. 18-1 at 5; Doc. 18-6 at 10), including the three grounds for relief set out in the instant Petition.  On March 15, 2005, the Superior Court adopted President Judge Vican's Pa. R.A.P. 1925(a) Opinion/Statement and Order.  (Doc. 18-6 at 12.)

Petitioner filed a Petition for Allowance of Appeal in the Supreme Court of Pennsylvania in which he presented four (4) questions for review. (*See* Doc. 14 at 44. )  The questions presented include two of the grounds for relief set out in the instant Petition.  The Supreme Court denied the Petition for Allowance of Appeal on October 18, 2005.

Petitioner filed the instant counseled 28 U.S.C. § 2254 habeas petition on October 5, 2006.  (Doc. 1.)  The Court ordered service on October 17, 2006.  (Doc. 3.)  A response to the Petition was filed by the Monroe County District Attorney's office on November 6, 2006.  (Doc. 14.)  Petitioner's Memorandum of Law in Support of Petition for Writ of Habeas Corpus and Contra Respondent's Reply (Doc. 18-1) was filed on December 5, 2006.  On May 24, 2007, after review of the parties' submissions, the Court ordered supplemental

8

briefing of certain issues identified in the Order.  (Doc. 27.)
The briefs were to be filed on or before June 6, 2007, and the
parties were allowed until June 20, 2007, to file reply briefs.
(*Id.*)  Only Respondents filed the supplemental brief.  (Doc. 28.)
Petitioner did not file a reply to Respondents' submission and the
time for such filing has passed.  Therefore, this matter is now
ripe for disposition.

## II. Discussion

As noted by our Third Circuit Court of Appeals, the Supreme
Court has often said habeas corpus is an "'extraordinary remedy'
reserved for defendants who were 'grievously wronged' by the
criminal proceedings." *Dunn v. Colleran*, 247 F.3d 450, 468 (3d
Cir. 2001) (*quoting Calderon v. Coleman*, 525 U.S. 141, 146 (1998)).
The reasons for restraint exercised by federal courts in reviewing
and granting habeas relief are many, including the considerations
of comity and federalism.  "The States possess primary authority
for defining and enforcing the criminal law.  In criminal trials
they also hold the initial responsibility for vindicating
constitutional rights.  Federal intrusions into state criminal
trials frustrate both the States' sovereign power and their good-
faith attempts to honor constitutional law." *Engle v. Isaac*, 456
U.S. 107, 128 (1982).  Also, states have a recognized interest in
the finality of convictions that have survived direct review within
the state court system. *Brecht v. Abrahamson*, 507 U.S. 619, 620

(1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). Absent special circumstances, the petition "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b). If an applicant has the right to raise the questions presented under any available state procedure, he shall not be deemed to have exhausted the remedies available. 28 U.S.C. § 2254(c). If a claim presented in a habeas § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless

> the adjudication of the claim -- (1) resulted
> in a decision that was contrary to, or
> involved an unreasonable application of,
> clearly established Federal law, as
> determined by the Supreme Court of the United
> States; or (2) resulted in a decision that
> was based on an unreasonable determination of
> the facts in light of the evidence presented
> in the State court proceeding.

28 U.S.C. § 2254(d).

A one year limitation period applies to a § 2254 petition. 28 U.S.C. § 2244(d)(1). The limitation period runs from the latest of one of four predicate occurrences, most commonly the date on which the judgment became final by the conclusion of direct review or the expiration of the time for filing such review. 28 U.S.C. §

10

2244(d)(1)(A).

Here, Petitioner's habeas petition raises the questions of whether he has complied with the procedural requirements of § 2254 and § 2244 and, concerning the merits of his claims, whether there has been a violation of constitutional rights or federal law in the actions complained of which took place during Petitioner's trial.

Petitioner asserts he is entitled to relief because he was denied a fair trial on the following three grounds: 1) Due Process and right to cross-examination violations based on the prosecution's failure to provide the defense with a blood spatter expert report relied upon by a testifying expert, prosecution witness Mihalakis, and related trial court rulings (Doc. 1 Ex. 3); 2) Due Process and right to cross-examination violations based on limitations imposed on the cross-examination of prosecution witness Laird (Doc. 1 Ex. 4); and 3) the presumption of innocence and procedural due process were rendered meaningless by the trial court's allowing the prosecution to refer to the decedent as "the victim" (Doc. 1 Ex. 5). We will address each of these grounds for relief in turn.

## A.   *Blood Spatter Expert Report*

As his first ground for relief, Petitioner states the following:

> The lower court erred with respect to the
> Commonwealth's discovery violation when
> government expert witness Mihalakis testified
> to and relied on the report of a blood

11

> spatter expert not provided to the defense
> despite repeated specific discovery requests
> thus denying Petitioner procedural due
> process of law, the ability to conduct an
> effective cross examination and fair trial.

(Doc. 1 at 17.)  As will be discussed in greater detail below, this claim as stated is similar, though not identical, to those raised before state courts.  (*See* Doc. 14 Exs. B, C, D.)  However, in Petitioner's Memorandum of Law in Support of Petition for Writ of Habeas Corpus and Contra Respondent's Reply (Doc. 18-1), he also argues the report of the blood spatter expert, which he received on August 30, 2006, favors the defense.  (Doc. 18-1 at 12.)  He did not make this argument in state court.  (*See* Doc. 14 Exs. B, C, D.)

**1.   *Due Process Violation Based on Failure to Produce Evidence***

Regarding the failure of the prosecution to produce the blood spatter expert report, Petitioner asserts he filed a pretrial motion for discovery requesting, *inter alia*, all expert reports generated by Commonwealth witnesses.  (Doc. 1 at 17.)  Petitioner later filed an Omnibus Pre-Trial Motion within which he requested the expert report of Paul Kish, the Commonwealth's blood spatter expert.  (*Id.*)  At the hearing held on the Omnibus Motion, Monroe County Assistant District Attorney Christine stated Mr. Kish would not be a witness for the Commonwealth case in chief and as of that date the Commonwealth did not intend to get a report from him. (*Id.*)  When Dr. Isadore Mihalakis was called by the Commonwealth as an expert witness to render an opinion as to the manner of death,

12

in the course of his testimony he indicated he reviewed Mr. Kish's report. (*Id.*)  Although the prosecution said they included it in discovery, they could not show the court they had done so.  (*Id.*)

Petitioner argues "[a] mistrial was the proper and only adequate remedy due to the irreparable prejudice caused by the discovery violation." (Doc. 18-1 at 8.)  Petitioner cites the fact that Dr. Mihalakis had referred to the report before the court excluded it and Petitioner did not have the benefit of the report to effectively cross-examine Dr. Mihalakis or present a complete defense. (*Id.*)  Petitioner cites Pennsylvania Rules of Criminal Procedure and decisions of Pennsylvania courts in support of his argument that a new trial is warranted.  (Doc. 18-1 at 6-9.)  He faults the trial court opinion and Superior Court ruling for not conducting a proper discovery violation analysis.  (*Id.* at 9.)

Petitioner also maintains the prosecution's withholding of evidence constitutes a violation of the Due Process Clause of the Fourteenth Amendment because he has suffered the required prejudice. (Doc. 18-1 at 10-13.)  Petitioner contends prejudice can be found on three bases: he was precluded from cross-examining Dr. Mihalakis concerning one of the bases of his expert opinion; his experts did not have the benefit of reviewing the report in forming their opinions; and he was precluded from reviewing the report with expert consultants in preparation for trial.  (Doc. 18-1 at 11-12.)  Finally, Petitioner asserts the report favors the

13

defense as it is consistent with the defense theory of the case. (*Id.* at 12.)

It is well recognized that a right created by state law is not cognizable as a basis for federal habeas relief pursuant to § 2254. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citations omitted). Further, it is also "well established that a state court's misapplication of its own law does not generally raise a constitutional claim." *Kontakis v. Beyer*, 19 F.3d 110, 117 n.12 (3d Cir. 1994) (*quoting Geschwendt v. Ryan*, 967 F.2d 877, 888-89 (3d Cir.) (en Banc), *cert. denied*, 506 U.S. 977 (1992)). Therefore, even if Petitioner's claimed violations of state procedural rules and state law recommended remedies are valid, they do not form bases for the instant petition unless the supporting facts are sufficient to make out a federal due process claim.

A federal due process claim based on the prosecution's withholding of or failure to produce evidence is known as a "*Brady* claim" originating in the United States Supreme Court holding in *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The Court identified the three elements of a *Brady* claim in *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). First, "the evidence at issue must be favorable to

14

the accused, either because it is exculpatory, or because it is impeaching." *Id.* Second, "the evidence must have been suppressed by the State, either willfully or inadvertently." *Id.* Third, "prejudice must have ensued." *Id.* Every failure to disclose favorable evidence does not rise to the level of a constitutional violation. *See Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995). The failure to disclose constitutes a due process violation "only if the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id.* at 434. The failure to disclose evidence is not a *Brady* violation "unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler*, 527 U.S. at 281.

The Third Circuit Court of Appeals recently considered a *Brady* claim, stating the petitioner needed to show the suppressed evidence was "material and favorable." *Albrecht v. Horn*, 485 F.3d 103, 131 (3d Cir. 2007). Citing the "reasonable probability" standard, the court stated "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Albrecht*, 485 F.3d at 131 (*citing Kyles*, 514 U.S. at 434).

a.  ***Exhaustion of Brady Claim***

15

As a threshold matter, we consider the question of whether Petitioner's *Brady* claim as presented in this Petition has been exhausted in State court.[3]

Section 2254(b)(1) requires that the applicant must have exhausted all available remedies in state court unless one of the two exceptions to the exhaustion requirement outlined in § 2254(b)(1)(B) apply or the state has expressly waived the requirement.  28 U.S.C. § 2254(b).  A petitioner is not required to have exhausted state remedies when no state corrective process is available or when circumstances make any available process ineffective to protect the applicant's rights.  28 U.S.C. § 2254(b)(1)(B).  The federal habeas petitioner has the burden of proving exhaustion of all available state remedies.  *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

Here Petitioner makes no claim that the two exceptions to the exhaustion requirement of § 2254(b)(1)(B) apply, nor has the state

---

[3]  The Court discussed this issue and sought additional briefing from the parties addressing it in our Order of May 24, 2007.  (Doc. 27.)  As noted in the Procedural Background section of the text, Petitioner did not file the required supplemental brief and Respondents did not address the issue in the brief filed (Doc. 28).  Petitioner did not file a reply to the Respondents' brief, and the time for such filing has passed.  The exhaustion issue is properly raised and considered *sua sponte* by the reviewing court. *See, e.g., Hull v. Freeman*, 932 F.2d 159, 164 n.4 (3d Cir. 1991), *overruled on other grounds by Caswell v. Ryan*, 953 F.2d 853 (3d Cir. 1992); *McClure v. Wilson*, No. Civ. A. 02-1206, 2003 WL 23194654 at *2 n.2 (E.D. Pa. Feb. 4, 2003).

expressly waived this requirement.  Although it is Petitioner's burden to prove exhaustion, *Parker v. Kelchner*, 429 F.3d 58, 62 (3d Cir. 2005), and he has not done so, we will independently review whether Petitioner has exhausted his state remedies.

"An applicant shall not be deemed to have exhausted the remedies available . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).  The exhaustion doctrine is designed to give the state courts a "full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  The claim asserted must have been "fairly presented" in the state courts, meaning that each level of the state courts must have been presented with the substance of the defendant's claims.  *Duncan v. Henry*, 513 U.S. 364, 366 (1995); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Doctor v. Walters*, 96 F.3d 675, 678 (3d Cir. 1996); *Evans v. Court of Common Pleas, Del. Co., Pa.*, 959 F.2d 1227, 1230 (3d Cir. 1992).  "The petitioner's state court pleadings and briefs must demonstrate that he has presented the legal theory and supporting facts asserted in the federal habeas petition in such a manner that the claims raised in the state courts are "substantially equivalent" to those asserted in federal court.  *Doctor*, 96 F.3d at 678 (*citing Bond v. Fulcomer*, 864 F.2d 306, 309 (3d Cir. 1989)).  "[T]he same method of legal

17

analysis must be available to the state court as will be employed in the federal court." *Evans*, 959 F.2d at 1231.

Petitioner's *Brady* claim raised in this habeas petition has not been fairly presented in state court. Neither the trial court nor the Superior Court discussed Petitioner's claim regarding Dr. Mihalakis and the blood spatter expert report in terms of a *Brady* violation. (*See* Doc. 14 Exs. B, C.) Logically, they could not have done so because a necessary element of such a claim is a showing that the evidence withheld must have been favorable to the accused and, because Petitioner did not receive a copy of the report until the state appeals process was complete, he could not have characterized the contents of the report. *See Strickler*, 527 U.S. at 281. Similarly, during the state court appellate process, he could only speculate about materiality and prejudice flowing from the nondisclosure: without knowledge of the content of the report, he did not have a basis to argue the reasonable probability of a different verdict. *Id.*

Thus, Petitioner's claims that he suffered prejudice based on being precluded from cross-examining Dr. Mihalakis concerning one of the bases of his expert opinion, that his experts did not have the benefit of reviewing the report in forming their opinions, and that he was precluded from reviewing the report with expert consultants in preparation for trial (Doc. 18-1 at 11-12) - even if raised before the state courts - could not have formed the basis

18

of establishing the required prejudice because, at the time,

Petitioner was not aware of the content of the Kish report.

Petitioner now argues the report is favorable to the defense

theory of the case, making the following specific assertions.

(Doc. 18-1 at 12.)

> The blood spatter report favors the
> defense in that it clearly shows the spatter
> of blood is consistent with Miss Walling
> sitting on the bed and is consistent with a
> self inflicted wound which is front to back,
> right to left and upward.  The Petitioner has
> maintained all along that Miss Walling shot
> herself.
>
> The blood spatter report also indicates
> that blood spatter pattern starts between the
> lower two drawers of the dresser and extends
> upward onto the dresser top continuing upward
> onto the mirror.  This cast off splatter is
> consistent with the defense theory that this
> was a self inflicted wound.

(*Id.*)  As noted above, this argument contains factual assertions

which could not have been presented in the state court proceedings

because Petitioner did not receive a copy of the report until

August 30, 2006 - ten (10) months after the Supreme Court of

Pennsylvania denied his petition for allowance of appeal.

Therefore, this is a case where, even if the issue as raised in the

state court review process could be interpreted to be based on a

*Brady* violation theory, the facts supporting the claim were not

presented and Petitioner's current claim does not satisfy the

"fairly presented" standard required to satisfy the exhaustion

requirement.  *Doctor*, 96 F.3d at 678; *Evans*, 959 F.2d at 1231.

19

Our conclusion that Petitioner has not "fairly presented" his claim in state courts does not end our exhaustion analysis.  A claim which has not been "fairly presented" may nonetheless be deemed exhausted if it would now be futile to raise the claim in state court.  *See, e.g., Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001); *Werts*, 228 F.3d at 192; *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000)(*citing McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999)); *Toulson v. Beyer*, 987 F.2d 984, 987-88 (3d Cir. 1993).  If state procedural rules would clearly prevent state courts from hearing the claim, it is considered futile.  *Id.*

These general principles mean that once a district court decides that a claim has not been fairly presented on direct appeal to the state appellate courts, the district court must decide if any other state procedure is available to give the petitioner the opportunity to bring his claim.  If another procedure is available, the district court should dismiss the claim without prejudice; if no other procedure is available, the district court applies the procedural default doctrine which will be discussed below.

As an alternative to the state appellate review process, a state's collateral review provisions must be considered as "available procedure[s]" to decide if the petitioner has exhausted his state remedies.  28 U.S.C. § 2254(c); *see Doctor*, 96 F.3d at 681.  While a petitioner need not have invoked every conceivably available state remedy, a state prisoner needs to have invoked

20

available state collateral review processes unless the same evidence and issues were already decided on direct appeal. *See*, *e.g.*, *O'Sullivan*, 526 U.S. at 844-45; *Brown v. Allen*, 344 U.S. 443, 447 (1953); *Doctor*, 96 F.3d at 680-82.  In Pennsylvania, the Post Conviction Relief Act (PCRA), 42 Pa. C.S. §§ 9541-46, is the collateral means to challenge a conviction or sentence.

Applying these standards to the instant case, because Petitioner has not fairly presented his *Brady* claim to the Pennsylvania courts, he must seek available state collateral review unless it is no longer available to him.  Therefore, we must decide whether relief under the PCRA is currently available to Petitioner.

Based on the following analysis, we conclude Petitioner is not able to apply for relief under the PCRA.  Pursuant to the pertinent provisions of the PCRA, a petitioner is eligible for relief if, *inter alia*, he is currently serving a sentence.  42 Pa. C.S.A. § 9543(a)(1)(I).  He must prove by a preponderance of the evidence that the conviction or sentence resulted in one or more of seven enumerated circumstances.  42 Pa. C.S.A. § 9543(a)(2).  The circumstance pertinent to this case is when a conviction or sentence resulted from: "A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."  42 Pa. C.S.A. §

21

9543(a)(2)(i).  The petitioner cannot have previously litigated or waived the issues presented. 42 Pa. C.S.A. 9543(a)(3).  An issue is waived if the petitioner could have but failed to raise an issue "before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."  42 Pa. C.S.A. § 9544(b). Under the PCRA, a prisoner may file a challenge to his conviction for up to one year after the judgment becomes final, unless the facts upon which the challenge is predicated were unknown at the time.  42 Pa. C.S. § 4245(b)(1).  If the predicate facts are discovered after the one year period, the prisoner must file his petition within sixty days of discovery.  42 Pa. C.S. § 4245(b)(2).

Although the district court only reaches the merits of a § 2254 petition "if state law 'clearly forecloses state court review of the unexhausted claims,'" *Slutzker v. Johnson*, 393 F.3d 373, 380 (3d Cir. 2004) (*quoting Toulson*, 987 F.2d at 987)), a statute of limitations bar generally satisfies this requirement, as does waiver of an issue pursuant to 42 Pa. C.S.A. § 9544(b) in non-capital cases, *Carpenter v. Vaughn*, 296 F.3d 138, 147 (3d Cir. 2002).  In *Slutzker*, the court analyzed whether a *Brady* claim could be brought after the filing time allowed in the PCRA.  *Id.*  The court concluded it could not because "the period for filing the PCRA petition is not subject to the doctrine of equitable tolling; instead, the time for filing a PCRA petition can be extended only to the extent that the PCRA permits it to be extended, i.e., by

22

operation of one of the statutorily enumerated exceptions to the PCRA time bar." *Id.*

Here PCRA review is foreclosed on both waiver and timeliness grounds. Regarding waiver, Petitioner could have raised the *Brady* claim based on the contents of the blood spatter expert report in his direct appeal. Although Petitioner asserts he did not receive a copy of the report until August 30, 2006, (Doc. 18-1 at 5) he was made aware of the report during trial (Doc. 1 at 17) and was clearly aware of its significance based on the claim raised in the state appellate courts (*see* Doc. 14 Exs. C, D). Petitioner makes no argument that he was prevented from receiving a copy of the report after he became aware of it at trial; he states only that "the record establishes that the report was not provided to the defense . . . [and] the defense finally received the report by fax on August 30, 2006." (Doc. 18-1 at 12.) We have no reason to conclude that with due diligence Petitioner could not have received the report upon learning of its existence at trial or shortly thereafter. Therefore, with due diligence Petitioner *could have* raised this issue on direct appeal and failed to do so.

Similarly, Petitioner cannot take advantage of the statutory exceptions to the one year PCRA filing provision because he has not presented facts which would support the application of an exception. *See* 42 Pa. C.S.A. § 9545(b). The two potentially applicable exceptions would require a showing that failure to raise

23

the issue was the result of interference by government officials, 42 Pa. C.S.A. § 9545(b)(1)(i), or "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence," 42 Pa. C.S.A. § 9545(b)(1)(ii).  Although government officials may have interfered with Petitioner's receipt of the report before trial, as noted above, Petitioner makes no claim that he was prevented from receiving the report after he became aware of it.  Also as discussed above, Petitioner was unaware of the substance of the report at the time of trial, but he presents no facts from which we could conclude that, with due diligence, he could not have received a copy of the report early enough to raise it in state appellate or collateral proceedings.

Because the foregoing analysis indicates Petitioner would now be foreclosed from raising the *Brady* claim presented here in the Pennsylvania courts, the exhaustion requirement is considered either excused or satisfied since an absence of state corrective process exists.  *See*, *e.g.*, *Lines*, 208 F.3d at 159-60 (*citing McCandless*, 172 F.3d at 260).

Claims deemed exhausted because of a state procedural bar are procedurally defaulted.  *See*, *e.g.*, *Lines*, 208 F.3d at 159-60 (*citing McCandless*, 172 F.3d at 260).  The district court then analyzes the claims under the procedural default doctrine.  *Id.*; *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991).  Under this

24

doctrine, a district court does not reach the merits of a defaulted claim unless the petitioner can show "cause and prejudice" or that a "fundamental miscarriage of justice" will result if the court does not consider the merits. *Coleman*, 501 U.S. at 731.  In order to show "cause and prejudice" sufficient to satisfy a state court default, a petitioner must show the "cause" for his default and "prejudice" attributable thereto. *Werts*, 228 F.3d at 192 (*citing Harris v. Reed*, 489 U.S. 255 (1989)).  To show a "fundamental miscarriage of justice," a petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 326 (1995).  If a petitioner can meet the "cause and prejudice" or "fundamental miscarriage of justice" standard, his default will be excused. *Id.*

As noted above, despite the Court's Order directing the parties to address the exhaustion of the *Brady* claim as set out in filings supporting the Petition (Doc. 27), neither party has done so.  Although Petitioner has made no attempt to show cause and prejudice relating to the default, our review of the record reveals none.

"The first step in establishing cause and prejudice is to establish cause, i.e., 'some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule.'" *Slutzker*, 393 F.3d at 381 (*quoting Murray v.*

*Carrier*, 477 U.S. 478, 488 (1986).  The United States Supreme Court cited examples of what may constitute "cause" for the procedural default in *Murray*: showing that a factual or legal basis for a claim was not available, showing interference by government officials sufficient to make compliance impracticable, or ineffective assistance of counsel.  *Id.*

As discussed above in the context of PCRA waiver and exceptions to the statute of limitations, here Petitioner has not set forth facts from which we could infer cause for the procedural default because there is no evidence that he was prevented from obtaining the blood spatter expert report after he became aware of it at trial.  Given that cause cannot be established on the record before us, we do not reach the prejudice prong of the inquiry.

Petitioner is also unable to satisfy the "fundamental miscarriage of justice" standard to excuse procedural default.  To show that a "fundamental miscarriage of justice" would result if a court were to fail to entertain the merits of a claim, a petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 326.  This requires a petitioner to demonstrate "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  *Id.* at 327.

Petitioner's brief argument regarding the support for the defense theory of the case provided in the blood spatter expert

26

report does not make the required showing.  (*See* Doc. 18-1 at 12.)
Given the evidence outlined in the Pennsylvania Superior Court
opinion (Doc. 14 at 33-43), it is unlikely Petitioner could meet
what the Third Circuit Court of Appeals has referred to as a
"stringent standard." *Slutzker*, 393 F.3d at 380 n.7.

Based on the foregoing analysis, Petitioner's *Brady* claim has
been procedurally defaulted, and we find no basis upon which to
excuse the default.  Therefore, dismissal of this claim is
appropriate on procedural grounds.

**b.   *Merits of Brady Claim***

Notwithstanding this conclusion, we will briefly discuss the
merits of Petitioner's *Brady* claim as allowed by 28 U.S.C.
2254(b)(2).[4]  This provision allows a district court to deny a

---

[4]  In our analysis of the merits of the *Brady* claim, we do not
reference Respondents' arguments because they are clearly not
drafted in response to Petitioner's claim as currently asserted.
For example, in addressing the issue, Respondents refer to
Petitioner as "Appellant." (*See* Doc. 28 at 5-7.)  Moreover,
Respondents state that "Appellant fails to allege that the Kish
report contained exculpatory evidence or was material." (Doc. 28
at 7.)  Petitioner makes exactly these claims in his supporting
brief.  (*See* Doc. 18-1 at 12.)

Furthermore, as noted in the Court's Order (Doc. 27),
Respondents' initial filing (Doc. 14) does not comport with
applicable federal rules.  Respondents' subsequent filing (Doc. 28)
suffers from similar infirmities.  For example, the response filed
does not attach any portions of the record to which direct
reference is made.  (*See* Doc. 28 *passim.*)  Additionally, the
response addresses eight bases of error when Petitioner raises only
three.  (*Id.*)

Based on these pervasive inadequacies, no reliance is placed
on arguments presented by Respondents.

27

claim on the merits notwithstanding the petitioner's failure to exhaust state court remedies.  *Id.*

Although the "fundamental miscarriage of justice" standard of procedural default may be more stringent than the materiality standard in the *Brady* analysis - the former requiring a "more likely than not" showing that no reasonable juror would have convicted him and the latter a less demanding showing of a "reasonable probability" of a different result - Petitioner's claim also fails the lesser standard due to lack of factual support.

As set out above, Petitioner makes only the following specific assertions.  (Doc. 18-1 at 12.)

> The blood spatter report favors the defense in that it clearly shows the spatter of blood is consistent with Miss Walling sitting on the bed and is consistent with a self inflicted wound which is front to back, right to left and upward.  The Petitioner has maintained all along that Miss Walling shot herself.

> The blood spatter report also indicates that blood spatter pattern starts between the lower two drawers of the dresser and extends upward onto the dresser top continuing upward onto the mirror.  This cast off splatter is consistent with the defense theory that this was a self inflicted wound.

(*Id.*)  Petitioner does not provide any expert analysis of the findings in the blood spatter expert report.  He does not provide an analytical framework within which to consider what he deems

favorable evidence.  Petitioner states only that the spatter pattern is consistent with the defense theory of the case; he does not assert the evidence is *inconsistent* with or precludes the prosecution's theory.

Our review of the report at issue reveals Mr. Kish's stated conclusions are not as supportive as Petitioner suggests.  The report contains a number of conclusions including: "The specific location of Ms. Walling, at the time she was shot, in the Southwest bedroom may not be determined by the bloodstain patterns" (Doc. 18-5 at 4, Kish Report); and "[i]n consideration of the case facts, the limited amount of apparent blood staining identified on Mr. Say's clothing does not exclude him from being the person who inflicted the gunshot wound to Jamie Walling" (*id.*).

Given the vague conclusory assertions provided in Petitioner's supporting brief (Doc. 18-1 at 12), the conclusions reached by Mr. Kish in the blood spatter expert report (Doc. 18-5 at 4) and the evidence reviewed in the Superior Court opinion (Doc. 14 at 33-41), we conclude Petitioner has provided no basis upon which the Court can conclude that the "trial result[ed] in a verdict [un]worthy of confidence" based on the absence of the evidence related to the blood spatter expert report.[5]  *See Kyles*, 514 U.S. at 434.

---

[5]  In conjunction with the lack of evidence proffered in support of his *Brady* claim, we note Petitioner has not sought an evidentiary hearing on the issue, nor has he produced evidence which would satisfy the statutory requirements for holding such a hearing.  Pursuant to 28 U.S.C. § 2254(e)(2),

Petitioner does not develop any additional argument in support of his other claimed bases of prejudice: Petitioner's claims that he suffered prejudice based on being precluded from cross-examining Dr. Mihalakis concerning one of the bases of his expert opinion, that his experts did not have the benefit of reviewing the report in forming their opinions, and that he was precluded from reviewing the report with expert consultants in preparation for trial (Doc. 18-1 at 11-12).   Because Petitioner has not shown the content of the report provides the suggested support for his theory of the

> [i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the Court shall not hold an evidentiary hearing on the claim unless the applicant shows that -- (A) the claim relies on . . . (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

For the reasons discussed in the text in the context of exhaustion and procedural default, we have no basis upon which to conclude the factual predicate to the current scope of Petitioner's *Brady* claim - the substance of the blood spatter expert report - could not have been discovered through the exercise of due diligence and presented in state court proceedings.  Also as discussed in the text regarding the merits of the *Brady* claim, Petitioner has not produced sufficient evidence from which we could conclude that no reasonable factfinder would have found him guilty based on the contents of the report.

case and he makes no attempt to augment his conclusory assertions, these claims of prejudice do not support a *Brady* violation.

Petitioner's analogy of his case to *Commonwealth v. Ulen*, 650 A.2d 416 (Pa. 1994), where the court found a due process violation warranted a new trial, is without merit. Though Petitioner does not develop the analogy (*see* Doc. 18-1 at 11-12), we have reviewed the case and conclude the court's decision that a new trial was warranted was based on the finding the prosecution had withheld tapes which conclusively proved bias of a key defense witness and agreed the prosecution's withholding of the tapes was an "apparent attempt to ambush the defense." *Id.* at 419 & n.1 (citation omitted). Here Petitioner has made no such showing.

In summary, Petitioner's claim that habeas relief is warranted based on the prosecution's failure to provide the blood spatter expert report prior to trial cannot provide a basis for his Petition on both procedural and substantive grounds. Petitioner's allegations of state law violations do not, of themselves, amount to a constitutional due process deprivation and cannot support his habeas action. Further, his allegation of a *Brady* violation based on the substance of the blood spatter expert report creates an issue which has not been fairly presented for state court review and has been procedurally defaulted because Petitioner has presented no facts (nor do we glean any from the record) which would support a finding of cause and prejudice or a fundamental

31

miscarriage of justice which would excuse the procedural default. Finally, considering the merits of Petitioner's claimed due process violation, Petitioner has not presented facts or evidence to support his claim, nor can we find sufficient support for this claim to go forward based upon our independent review of the record before us.  For all of the above reasons, Petitioner's habeas petition cannot proceed on the basis of a due process claim related to the blood spatter expert report.

**2.   *Cross-Examination of Dr. Mihalakis and Related Rulings***

We will now address Petitioner's first asserted ground for relief independent of a *Brady* claim.  As set out above, as his first ground for relief, Petitioner states the following:

> The lower court erred with respect to the Commonwealth's discovery violation when government expert witness Mihalakis testified to and relied on the report of a blood spatter expert not provided to the defense despite repeated specific discovery requests thus denying Petitioner procedural due process of law, the ability to conduct an effective cross examination and a fair trial.

(Doc. 1 at 17.)  Though Petitioner does not attempt to do so beyond the arguments discussed in the previous section of this Memorandum, we will examine whether, independent of a *Brady* violation, the facts presented regarding this claim amount to a violation of the United States Constitution or federal law which would entitle Petitioner to habeas relief.  However, before addressing the merits of the claim, we will briefly discuss exhaustion.

32

In the Opinion/Statement Pursuant to Pa. R.A.P. 1925(a) issued by the Court of Common Pleas of Monroe County, President Judge Ronald E. Vican stated:

> Defendant alleges this court erred when it denied Defendant's motion for a mistrial and denied Defendant's motion to strike the testimony of Dr. Isadore Mihalakis after said witness testified to and relied on the report of a blood spatter expert where Defendant alleges he was never provided with such a report prior to trial.

(Doc. 14 at 24.)  Similarly, the Pennsylvania Superior Court quoted Petitioner when it set out the claims before it on appeal:

> The lower court erred and deprived Defendant of a fair trial when it denied Defendant's motion for a cautionary instruction, and denied Defendant's motion to strike the testimony of government witness Mihalakis after said witness testified to and relied on the report of a blood spatter expert where despite a specific discovery request the Defendant was not provided with said expert report and where Defendant petitioned the lower court pretrial to compel the production of said report and the government represented to the lower court that no such report existed.

(Doc. 14 at 41.)

Though the statement of the claim before the Superior Court includes the claim that Petitioner was denied a fair trial, the record before us does not show that the claims raised before Pennsylvania courts assert Petitioner was denied "procedural due process of law [and] the ability to conduct an effective cross examination," (Doc. 1 at 17).  In a previous Order requiring

33

supplemental briefing, the Court noted Petitioner's first ground for relief was consistent with the issue raised in the courts of the Commonwealth of Pennsylvania. (Doc. 27 at 2.) However, a more thorough review of the record raises the question of whether this claim is exhausted.

As discussed above regarding Petitioner's *Brady* claim, exhaustion requires that the claim raised in a habeas petition must have been "fairly presented" in the state courts, meaning that each level of the state courts must have been presented with the substance of the defendant's claims. *Duncan v. Henry*, 513 U.S. 364, 366 (1995); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Doctor v. Walters*, 96 F.3d 675, 678 (3d Cir. 1996); *Evans v. Court of Common Pleas, Del. Co., Pa.*, 959 F.2d 1227, 1230 (3d Cir. 1992). "The petitioner's state court pleadings and briefs must demonstrate that he has presented the legal theory and supporting facts asserted in the federal habeas petition in such a manner that the claims raised in the state courts are "substantially equivalent" to those asserted in federal court. *Doctor*, 96 F.3d at 678 (*citing Bond v. Fulcomer*, 864 F.2d 306, 309 (3d Cir. 1989)). "[T]he same method of legal analysis must be available to the state court as will be employed in the federal court." *Evans*, 959 F.2d at 1231.

Here, because the record does not indicate Petitioner framed his claim in terms of procedural due process and the right to conduct an effective cross-examination, the question arises whether

34

he presented the same "legal theory" to the state courts.  However, because the claims are similar, we will assume *arguendo* the first ground for relief raised here has been exhausted and adjudicated on the merits.

Because we assume Petitioner's claims here reviewed have been exhausted in state court, our review is conducted within the parameters set out in 28 U.S.C. § 2254(d).  Therefore, habeas relief cannot be granted unless

> the adjudication of the claim -- (1) resulted
> in a decision that was contrary to, or
> involved an unreasonable application of,
> clearly established Federal law, as
> determined by the Supreme Court of the United
> States; or (2) resulted in a decision that
> was based on an unreasonable determination of
> the facts in light of the evidence presented
> in the State court proceeding.

28 U.S.C. § 2254(d).  This is a limited review which does not consider whether the trial court could have made a different decision, or whether the reviewing court would have decided the issue differently.  *See*, *e.g.*, *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 889-90 (3d Cir. 1999) (citations omitted).

We note that a state court does not need to cite federal cases or even exhibit an awareness of them, "so long as neither the reasoning nor the result of the state court decision contradicts" Supreme Court precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002). "The question is whether the reasoning of the [state] court is consistent with federal law." *Savage v. The District Attorney of*

*the County of Philadelphia*, 116 Fed. Appx. 332, 336 (3d Cir. 2004) (not precedential) (*citing Priester v. Vaughn*, 382 F.3d 394, 398 (3d Cir. 2004)).

Importantly, even if a federal reviewing court concludes a constitutional error occurred at trial, habeas relief is not warranted if the trial error was harmless. *Brecht*, 507 U.S. at 638. *Brecht* established that the test to be applied "is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (*quoting Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). A habeas petitioner is not "entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.* (*citing United States v. Lane*, 474 U.S. 438, 449 (1986)).

Petitioner asserts he was denied "procedural due process of law, the ability to conduct an effective cross examination and a fair trial" (Doc. 1 at 17) in that he did not have the benefit of the blood spatter expert report to cross-examine Dr. Mihalakis and the trial court erred in making certain rulings related to Dr. Mihalakis' testimony (Doc. 18-1 at 7-10). These assertions implicate general constitutional procedural due process and fair trial concerns as well as the Sixth Amendment Confrontation Clause.

A state criminal defendant has the right to be tried in accordance with the procedural due process requirements of the Fourteenth Amendment to the United States Constitution. *Rogers v.*

*Richmond*, 365 U.S. 534, 544-45 (1961).  "The Constitution guarantees a fair trial through the Due Process Clauses, but defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment . . . ."  *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984).  The Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

The essentials of a fair trial were set out by the United States Supreme Court in *In re Oliver*, 333 U.S. 257 (1948).

> A person's right to a reasonable notice of a charge against him, and an opportunity to be heard in his defense-a right to his day in court-are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.

*Id.* at 273.

The Sixth Amendment right to confront witnesses includes the right to conduct a reasonable cross-examination.  *Wright v. Vaughn*, 473 F.3d 85, 93 (3d Cir. 2006) (*citing Olden v. Kentucky*, 488 U.S. 227, 231 (1988)).  "At the core of the Confrontation Clause is the

right of every defendant to test the credibility of witnesses through cross-examination." *Savage v. The District Attorney of the County of Philadelphia*, 116 Fed. Appx. 332, 336 (3d Cir. 2004) (not precedential) (*citing Davis v. Alaska*, 415 U.S. 308, 315-16 (1974)). However, "[i]t does not follow . . . that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Given the trial judge's discretion to impose limits, the Confrontation Clause "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (internal quotation omitted).

Insofar as the Superior Court adopted the trial court's Opinion/Statement Pursuant to Pa. R.A.P. 1925(a) (Doc. 14 at 43) and the Pennsylvania Supreme Court denied review, the trial court's opinion stands as the opinion of the Pennsylvania courts on the issues raised in this claim. The 1925(a) opinion provided the following analysis:

> The record indicates some confusion between the Commonwealth and defense counsel concerning the report. The Commonwealth claims it sent the blood spatter report via fax and a hardcopy to defense counsel; while defense counsel claims they never received such report. [N.T. Volume V, November 3, 2003, Pages 34-40.] Whether the report was ever sent; or concomitantly, received and viewed by defense counsel, is of no import.

Dr. Isadore Mihalakis' qualifications as an
expert in the field of forensic pathology was
accepted by this court. [N.T. Volume V,
November 3, 2003, Pages 17-22.] As an
expert, Dr. Mihalakis is entitled to base his
opinion on the reports of other experts, even
if those reports are not admissible in
evidence. Pennsylvania Rule of Evidence 703.
The limitation is that the opinion of the
testifying expert who is using the report
must be his own, and not merely a recitation
of the opinion of another non-testifying
expert who authored that report. *See*
Primavera v. Celotex Corp., 608 A.2d 515 (Pa.
Super. 1992).

The record reflects Dr. Mihalakis only
briefly referred to the blood spatter report
in his lengthy testimony. [N.T. Volume V,
November 3, 2003, Page 30.] The record also
reflects Dr. Mihalakis' opinions were
formulated long before the doctor viewed the
blood spatter report so his opinion was not
merely a recitation of another non-testifying
expert. [N.T. Volume V, November 3, 2003,
Page 39.] As such, this court was proper in
denying Defendant's request to strike the
testimony of Dr. Mihalakis and to grant a
mistrial on the above-mentioned grounds would
be improvident.

(Doc. 14 at 24-25.)

Petitioner does not argue he is entitled to habeas relief on

his first claim in the context of constitutional or federal law

other than the *Brady*-related considerations discussed previously.

(*See* Doc. 18-1 at 6-12.) Although he does not argue the state

court decision regarding Dr. Mihalakis and the blood spatter expert

report was a decision "that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or . . .

resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d), our independent research and review of the record does not reveal any contradiction between the reasoning of the state court and federal law. Therefore, habeas relief may not be granted on this claim.

Further, even assuming *arguendo* that some error of federal magnitude occurred, the error would be harmless in that no evidence suggests the state court's rulings "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 638 (*quoting Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Because a habeas petitioner is not "entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice,'" *id.* (citation omitted), and, as discussed above regarding the *Brady* claim, Petitioner has not established prejudice, there is no basis for a finding that any error committed regarding this claim is not harmless.

Here the attorney for the Petitioner instantly objected to any reference to the blood spatter expert report and, after a lengthy discussion outside the hearing of the jury, the court ruled in favor of Petitioner that the prosecution could not use the report and the testifying expert, Dr. Mihalakis, could not refer to the report. (Doc. 1 at 20-29.) There was no further use or reference to the report at trial.

40

Although the record before us supports that Petitioner did not receive the report before trial, as discussed above, there is no indication in the report that it assists or exculpates Petitioner. (*See* Doc. 18-5.)   Under these circumstances, if any error was made either in the failure to supply Petitioner with the report or to completely prevent its reference at trial, the error was harmless and would not require a new trial.

### B.    *Laird Evidentiary Ruling*

As his second ground for relief, Petitioner states the following:

> The lower court erred and deprived the Petitioner of a fair trial and procedural due process of law in that it denied him the opportunity to conduct an effective cross-examination when it prohibited the Petitioner from cross-examining government witness, Laird, as to a Petition for a Writ of Habeas Corpus filed by his public defender while he was incarcerated and charged him with Unsworn Falsification to Authorities and False Reports to Law Enforcement Authorities during the investigation of the instant case and arising out of inconsistent statements given to police when said charges were later dropped when Laird became a cooperating government witness against the Defendant.

(Doc. 1 at 31.)

As a threshold observation, we note Respondents argue in their initial response to the Petition that this issue is waived because it was not timely preserved for habeas relief.   (Doc. 14 at 2-3.) As discussed above in the margin, *see supra* n.4, we do not rely on Respondents' arguments due to the pervasive inadequacies in their

41

initial and subsequent responses to the instant petition. (*See* Docs. 14, 28.)  Moreover, the issue of waiver of the claim related to Mr. Laird is not mentioned in Respondents' second response (Doc. 28) which was to have addressed the deficiencies of the first response (Doc. 14).

Because this claim appears to have been adjudicated on the merits in state court proceedings (Doc. 14 at 25, 42), our review is conducted within the parameters of 28 U.S.C. § 2254(d) as set out in the previous section of this Memorandum.

Also as set out previously, the Sixth Amendment right to confront witnesses includes the right to conduct a reasonable cross-examination.  *Wright*, 473 F.3d at 93 (citation omitted). Although testing a witness's credibility is at the core of the right, *Savage*, 116 Fed. Appx. at 336 (citation omitted), a trial judge has the right to impose limits, including "limits on defense counsel's inquiry into the potential bias of a prosecution witness," *Delaware v. Van Arsdall*, 475 U.S. at 679.

This legal framework supports Petitioner's assertion that the right is designed to allow the defense to uncover a witness's bias, motivation and prior inconsistent statements (Doc. 18-1 (citations omitted)).  However, in this case the reason for the trial judge's evidentiary ruling precluding the desired line of questioning does not call these principles into play.

Here defense counsel sought to impeach Mr. Laird with

information contained in a habeas petition filed on his behalf by his public defender.  (Doc. 18-1 at 15-16.)  In the trial judge's Pa. R.A.P. 1925(a) statement on the issue (later adopted by the Superior Court of Pennsylvania (Doc. 14 at 43)), he states that defense counsel attempted to cross-examine Laird concerning the habeas petition filed on his behalf, and "attempted to elicit hearsay statements from Laird."  (Doc. 14 at 25.)  After some discussion, the trial judge concluded: "To have Laird testify about what a third party [his public defender] wrote in a petition Laird never verified, adopted, or even knew the existence of, would have been hearsay in derogation of Pennsylvania Rule of Evidence 802." (*Id.* at 26.)

Because Mr. Laird testified at trial that he didn't know his lawyer filed the petition in question (Doc. 1 at 38) and did not recall making statements attributed to him therein (*id.*), using the document for impeachment purposes would have been improper - as the trial judge ruled, the petition could not be considered the defendant's prior statement (*id.* at 40).  Therefore, the trial judge's exclusion of this line of questioning does not amount to constitutional error.

As discussed in the previous section of this Memorandum, even assuming *arguendo* a trial court error occurred, any such error is subject to "harmless error" analysis.  *Brecht*, 507 U.S. at 638.  It is well established that evidentiary rulings in violation of the

Confrontation Clause are subject to harmless error analysis.  *See Wright*, 473 F.3d at 93 (*citing Delaware v. Van Arsdall*, 475 U.S. at 684).  Under *Brecht* the test to be applied "is whether the error had substantial and injurious effect or influence in determining the jury's verdict."  507 U.S. at 638 (internal quotation omitted).

Here we cannot conclude the asserted error regarding the Laird testimony had "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht,* 507 U.S. at 638.  Testimony regarding this matter provided this Court by Petitioner (Doc. 1 at 33-40) indicates the jury was aware that Mr. Laird had changed his statements to authorities.  (*See, e.g.,* Doc. 1 at 35-36.)  The jury was also aware that Mr. Laird's credibility was questionable: in his own words, he said "I am just leery to tell the truth." (Doc. 1 at 37.)  Further, although the trial judge limited cross-examination of Mr. Laird concerning the petition filed by his public defender, the jury was aware the petition was filed and that, within it, certain statements were attributed to him: defense counsel asked whether in the petition he said "the police wanted you to testify to something you didn't see . . . . Or they wanted you to testify contrary to your memory?"  (Doc. 1 at 38.)  He was later asked whether he had told the deputy coroner that the police wanted him to testify to things he didn't see. (Doc. 1 at 40.)  To all of these inquiries he either answered in the negative or stated "not that I recall." (*Id.* at 38, 40.)

Based on this evidence, we could not conclude the jury so

heavily relied on Mr. Laird's testimony that the limiting effect of the trial court's ruling could have had "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 638.  Given the extensive evidence presented at trial as reviewed in the Superior Court's opinion (Doc. 14 at 33-41), including the observation that "Joe Laird gave inconsistent versions of the events to the police," (Doc. 14 at 39), Petitioner is not entitled to habeas relief based on trial error because he has not established that the claimed error resulted in "actual prejudice." *Brecht*, 507 U.S. at 638 (citation omitted).

## C.   Reference to Decedent as "the Victim"

As his third and final ground for relief, Petitioner states the following:

> The Petitioner was denied a fair trial when the lower court allowed government attorneys and witnesses to repeatedly (97 times) and without limitation refer to the decedent as "the victim" throughout the entire trial and thus made the presumption of innocence and procedural due process of law meaningless.

(Doc. 1 at 41.)

This claim appears to have been adjudicated on the merits in state courts.  (*See* Doc. 14 at 28, 42, 44.)  Therefore, the 28 U.S.C. § 2254(d) review set out previously applies to this claim.

In reviewing this issue, the trial judge concluded that no error had occurred.  Reasoning that Jamie Walling could be a victim of her own hand and "jury sympathy for the victim and unfair

45

prejudice are not synonymous," the judge concluded it was not abuse of discretion to allow reference to her as "the victim." (Doc. 14 at 28.)

Petitioner acknowledges there is no Pennsylvania caselaw on point. (Doc. 18-1 at 17.) He does not cite any federal law addressing the issue. (*Id.*) However, despite the lack of authority, Petitioner maintains where "the only issue in dispute is whether a crime was actually committed," the use of the term "victim" created impermissible bias. (Doc. 18-1 at 16-17.)

Our research reveals no United States Supreme Court ruling which would undermine the state court analysis. Even lower federal court guidance does not suggest a different result than that reached by the trial and reviewing state courts. Although this issue does not involve an evidentiary ruling, because the question concerns unfair prejudice we can look for guidance at how courts have handled the question of when the probative value of evidence is outweighed by prejudice - the consideration of Rule 403 of the Federal Rules of Evidence. One consideration is whether the evidence "may cause a jury to base its decision on something other than the propositions in the case." *United States v. Guerrero*, 803 F.2d 783, 785 (3d Cir. 1986) (internal quotation omitted).

Given the substantive evidence in this case, we have no basis upon which to conclude the reference to the decedent as "the victim" caused the jury to base its decision on something other

than the wide-ranging evidence presented.  Because there is no authority which even suggests the trial judge's decision on this matter rises to the level of a constitutional violation, this claim cannot serve as a basis for the instant Petition.

A harmless error analysis would yield the same result.  Even if we assume it was error to allow the decedent to be referred to as "the victim," we have no basis to conclude the ruling had a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht*, 507 U.S. at 638, given the scope of the evidence presented.

### III. Conclusion

Having found no basis upon which habeas relief is warranted, the instant Petition is dismissed.  An appropriate Order follows.


<u>S/Richard P. Conaboy</u>
RICHARD P. CONABOY
United States District Judge


DATED: August 23, 2007


UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARK ANTHONY SAY,                    :

```
                              :
        Petitioner,           :CIVIL ACTION NO. 3:06-CV-1970
                              :
        v.                    :
                              :(JUDGE CONABOY)
FRANKLIN TENNIS, WARDEN,      :
and THOMAS CORBETT, ATTORNEY  :
GENERAL OF PENNSYLVANIA,      :
                              :
        Respondents.          :
```

---

## ORDER

AND NOW, THIS 23rd DAY OF AUGUST 2007, FOR THE REASONS DISCUSSED IN THE ACCOMPANYING MEMORANDUM, IT IS HEREBY ORDERED THAT:

1.  Petitioner's 28 U.S.C. § 2254 Petition for Habeas Corpus is DISMISSED;

2.  There is no basis for the issuance of a certificate of appealability;

3.  The Clerk of Court is directed to close this case.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge